Case 1:20-cv-07615-VEC   Document 18   Filed 05/07/21   Page 1 of 9



Peter A. Romero
promero@romerolawny.com

David D. Barnhorn
dbarnhorn@romerolawny.com

May 7, 2021

**VIA ECF**
Honorable Valerie E. Caproni
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

   Re: *Dario Rodriguez v. Kiara Foods Inc., et al.*
      Docket No.: 20-cv-07615 (VEC)

Dear Judge Caproni:

  This firm represents Plaintiff Dario Rodriguez in the above-referenced matter against Defendants Kiara Foods, Inc. d/b/a Manolo Tapas Restaurant and Jesus Perez (collectively as "Defendants"). Plaintiff brings claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), failure to pay spread of hours compensation under the NYLL, failure to issue accurate wage statements pursuant to NYLL § 195(3), and failure to provide a wage notice at his time of hire pursuant to NYLL § 195(1). The parties have reached a resolution of this action. Accordingly, Plaintiff now submits this motion for approval, pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreement with respect to Plaintiff's FLSA claims.[1] The parties' proposed Settlement Agreement and Release (the "Agreement") is attached as Exhibit A. Unfortunately, Plaintiff has not yet been able to sign this Agreement and Defendants must still obtain notarized signatures for the Confession of Judgement. The parties intend to supplement this motion by filing a fully signed Agreement as expeditiously as possible.

## Procedural History

  On September 16, 2020, Plaintiff filed his Complaint. D.E. 11. On December 11, 2020, Defendants filed their Answer to the Complaint. D.E. 12. On December 15, 2020, the Court referred this matter to the SDNY mediation program. D.E. 13. On March 2, 2021, SDNY Mediator Florence Dean conducted an initial mediation with the parties, which was unsuccessful. On March 16, 2021, Mediator Dean conducted a second mediation which reached a settlement in principle that the parties confirmed by email. Thereafter, the parties negotiated the terms of their formal settlement agreement.

---

[1] The parties do not seek the Court's approval with respect to the settlement of Plaintiff's non-FLSA claims as there is no requirement for the Court to do so. However, although non-FLSA claims do not require the Court's approval, the parties' settlement agreement, attached as Exhibit A, includes the resolution of all of Plaintiff's claims asserted in this lawsuit.

LAW OFFICE OF PETER A. ROMERO PLLC · LABOR AND EMPLOYMENT LITIGATION
825 Veterans Hwy, Hauppauge, New York 11788 · (631) 257-5588 · overtimelawny.com

The settlement agreement between the Plaintiff and the Defendants provides for payment of a gross sum of $25,000.00, inclusive of attorneys' fees and costs. Pursuant to the Agreement, Plaintiff will receive a total of $16,262.80 and Plaintiff's counsel will receive a total sum of $8,737.20, consisting of $8,130.40 for attorneys' fees (i.e. 1/3 of the net settlement amount after deducting costs from the gross settlement amount) and $605.80 for litigation costs. This settlement is secured by a confession of judgment from Defendants.

### **The Court Should Approve the Settlement Agreement as Fair and Reasonable**

FLSA claims may be dismissed with prejudice under Fed. R. Civ. P. 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-207. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Hernandez v. Merrill Lynch & Co., 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit typically apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The Wolinsky factors require consideration of the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arms'-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Id.

In this case, Plaintiff contends that Defendants employed him from on or about January 6, 2017 until on or about March 14, 2020 and that he performed non-exempt kitchen duties for the Defendants, including preparing and cooking food. Throughout his employment, Plaintiff regularly worked more than forty hours during each workweek. For this work, Plaintiff asserts that Defendants paid him a fixed weekly salary, regardless of the number of hours worked. As a result, despite frequently working in excess of forty hours in a workweek, Plaintiff asserts that Defendants failed to pay him at his statutorily-mandated overtime rate of pay of one and one-half times his applicable regular rate of pay.

Critically, the parties have several key disputes that impact liability, damages and the ability to collect a judgment in this lawsuit. Defendants contend that Plaintiff was paid correctly for all hours worked. Defendants also contest the number of hours worked by Plaintiff each week, asserting that Plaintiff worked fewer hours each week than alleged. Defendants have provided weekly work schedules in support of their position. Defendants also assert that Plaintiff was paid an hourly rate of pay, not a salary. The resolution of this dispute substantially impacts the assessment of Plaintiff's alleged damages. Indeed, as a restaurant worker paid a salary, the NYLL mandates that Plaintiff's damages be assessed by dividing his weekly salary by forty hours to determine his regular rate of pay and then assessing damages for overtime hours at the statutorily-mandated overtime rate of pay of one and one-half times his regular rate of pay. If Plaintiff were found to be paid an hourly rate of pay by a trier of fact, his overtime damages would instead be assessed at a half rate only,

which would dramatically reduce the amount of Plaintiff's damages owed. Additionally, Defendants contend that Plaintiff is not entitled to liquidated damages, whereas Plaintiff asserts that liquidated damages should be awarded because Defendants cannot establish that the alleged violations, if proven, were part of good faith efforts to comply with the FLSA.

Critically, and a central basis relating to the parties' settlement, Defendants assert that they have limited financial resources and cannot afford a larger settlement or judgment, noting that their restaurant was forced to close during certain periods of the pandemic. Defendants also supported their allegations of limited financial resources with contemporaneous documentary evidence. Because of this, Plaintiff faces a significant risk that he could end up collecting little or even no monetary recovery, even if successful at trial.

Plaintiff calculated his damages in order to assess his best possible recovery in this litigation. Making all reasonable assumptions in his favor, according to Plaintiff's calculations, Plaintiff's best potential recoveries under the FLSA at trial amounts to $77,521.95 for unpaid FLSA wages and $77,521.95 for FLSA liquidated damages, based on Plaintiff's contention that he was paid a salary. By comparison, Defendants contend that Plaintiff is not owed <u>any</u> unpaid FLSA wages or any FLSA liquidated damages.

Settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in formal written and document discovery, depositions of Plaintiff, Defendants, and likely several non-party witnesses. This settlement also avoids potential partial motions for summary judgment and a time consuming and risky trial, which could result in a months' or years' long delay to obtaining a potential recovery for the Plaintiff, even if he is successful, and avoids potentially facing future appeals. Notably, a trial in this lawsuit is particularly risky because it will likely turn almost entirely upon the credibility of the parties and determining whether Defendants' records are accurate and what manner Defendants calculated Plaintiff's compensation. As a result, all parties face a serious risk of losing at trial. Even if Plaintiff were successful on his FLSA overtime wage claims, but Defendants could prove that they made a good faith effort to comply with the FLSA, Plaintiff would not be entitled to liquidated damages under the FLSA, reducing Plaintiff's available FLSA damages by half. If Defendants could establish that the alleged violations were not willful, Plaintiff's FLSA claims would be subject to a two-year statute of limitations, which would further reduce his unpaid FLSA damages to $52,772.85. Moreover, in light of Defendants' defenses, there is a risk that Plaintiff could ultimately receive nothing at all under the FLSA. Thus, by settling at this stage, Plaintiff ensures that he will receive a recovery in this matter. Additionally, even if Plaintiff were successful at trial, there is a substantial risk that Plaintiff would be able to collect only a small portion of the judgment or possibly be unable to collect any recovery under the judgment due to Defendants' limited financial resources.

Accordingly, although there is a possibility that Plaintiff could recover higher damages if the case proceeded to trial, there is also the significant possibility that he could receive lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Thus, assuming this settlement is approved, Plaintiff will be able to recover the settlement funds more expeditiously, and with more certainty, than a trial judgment.

The parties have agreed to a mutual non-disparagement provision that contains the required carve out provision permitting parties to make truthful statements about this lawsuit and their experiences litigating this matter. Ramos Pelico v. PGNV, LLC, 2019 WL 2710176, at *3 (S.D.N.Y. June 28, 2019) (approving non-disparagement clause where "the non-disparagement clause is mutual and includes an explicit carve-out for truthful statements. The Agreement provides that the mutual non-disparagement clause 'shall not apply to truthful statements made by any of the Parties regarding their experiences in the Litigation and/or the underlying facts of any claim or defense.'"); Abreu v. Congregation Yetev Lev D'Satmar Meats & Poultry, Inc., 2019 WL 2526087, at *7 (E.D.N.Y. June 19, 2019) (quoting Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 180 (S.D.N.Y. 2015) (non-disparagement clause "'must include a carve-out for truthful statements about plaintiffs' experience litigating their case.'"); Payano v. 1652 Popham Assocs., LLC, 2019 WL 464231, at *4 (S.D.N.Y. Feb. 6, 2019) (collecting cases) (approving non-disparagement clause "that contains a carve out for truthful statements concerning the plaintiff's experience litigating the action." and noting "the overwhelming weight of authority has approved such provisions"); Elamrani v. Henry Limousine, Ltd., 2018 WL 3518505, at *3 (E.D.N.Y. July 19, 2018) (holding that "while the agreement does contain a mutual non-disparagement clause, it also contains carve-out language permitting plaintiffs to make truthful statements about plaintiffs' experience in litigating their claims. The Court finds that the agreement's language adequately protects plaintiffs' interests in accordance with the goals of the FLSA, and approves the agreement accordingly.).

Additionally, the reasonableness of this settlement is also assured by the involvement of a mediator. Indeed, the presence of a mediator "provides assurance that the settlement was not the product of collusion." Bilbao v. LCS Enters. Inc., 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); see also Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 618-619 (S.D.N.Y. 2012) (citing In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 159-160 (S.D.N.Y. 2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement). Here, the parties engaged in contentious negotiations requiring the assistance of a mediator and two mediations to resolve. Accordingly, the settlement achieved clearly reflects an arms'-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

**The Court Should Approve the Requested Attorneys' Fees and Costs as Reasonable**

In addition to assessing the reasonableness of the settlement award, most courts since Cheeks have found that courts "must also assess the reasonableness of any attorneys' fee award." Velasquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing Wolinsky, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing Wolinsky, 900 F. Supp. 2d at 336). In this case, the portion of the settlement amount attributable to attorneys' fees is $8,130.40, or one-third of the net settlement amount after deducting for litigation costs.

Notably, while Courts may now award attorneys' fees in amounts greater than one-third of the total settlement sum, plus costs, Fisher v. SD Prot. Inc., 948 F.3d 593 (2d Cir. 2020), Courts have traditionally held that approval of attorneys' fees of 1/3 of the settlement sum, plus costs, is reasonable and routinely approve such terms in settlement agreements. Tiro v. Public House Investments, LLC, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); Kochilas v. Nat'l Merchant Servs., Inc., 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); McDaniel v. City of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); see also Oxley v. Excellent Home Care Servs., LLC, 2020 WL 589581, at *3 (E.D.N.Y. Jan. 8, 2020), report and recommendation adopted, 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020) (citing Romero v. Westbury Jeep Chrysler Dodge, Inc., 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016)) (noting "courts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable" in FLSA settlements and awarding plaintiff's counsel a fee of 1/3 of the net settlement after costs, plus an award of costs); Yong Yuan Wang v. Mandarin Glen Cove, Inc., 2019 WL 5695910, at *2-3 (E.D.N.Y. Sept. 30, 2019) (citing Romero, 2016 WL 1369389, at *2) (same); Meza v. 317 Amsterdam Corp., 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); Cregg v. Firstservice Residential N.Y., Inc., Docket No. 15-cv-3876-LB, D.E. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); Najera v. Royal Bedding Co., LLC, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); Rangel v. 639 Grand St. Meat & Produce Corp., 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery, plus costs). Courts have held that a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. See Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Thus, Plaintiff's counsel's requested fees of one-third of the net settlement sum after deducting for litigation costs is certainly reasonable.

Additionally, the reasonableness of the fee for which approval is requested here is further solidified by "[a]pplying the lodestar method as a cross check." Guaman v. Ajna-Bar NYC, 2013 WL 445896, at *1 (S.D.N.Y. Feb. 5, 2013) (citing Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar check, the Firm multiplied the attorney hours spent on the case by each individual's reasonable hourly rate. See Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007).

Here, the Law Office of Peter A. Romero PLLC is a boutique employment litigation law firm, located at 825 Veterans Highway, Suite B, Hauppauge, New York 11788, with a substantial practice primarily representing plaintiffs in wage and hour matters, including individual, collective action and class action matters, and employment discrimination matters in both state and federal court.

With respect to Peter A. Romero, Esq.'s experience, Mr. Romero graduated from St. John's University School of Law in 2003.  He was admitted to practice in New York in November 2003, the United States District Court for the Southern District of New York in August 2004, and the United States District Court for the Eastern District of New York in October 2004.  Mr. Romero previously worked for a prominent employment law litigation firm as an associate from July 2004 until January 2009 and as a partner from January 2009 until June 2015.  Thereafter, beginning in June 2015 through the present, Mr. Romero has operated his own employment law litigation firm, the Law Office of Peter A. Romero PLLC, as its principle.  That firm employs one senior associate, the undersigned, David D. Barnhorn, Esq., a paralegal, and an administrative assistant, as well as other support staff as needed.  Throughout his legal career, beginning in July 2004 through the present, Mr. Romero has focused his practice almost entirely on employment law litigation, where a majority of his cases have been comprised of individual, collective action and class action wage and hour lawsuits in federal and New York courts.  Indeed, Mr. Romero has been appointed as Class Counsel in numerous class action cases in federal and New York courts.  Moreover, throughout his career, Mr. Romero has conducted numerous trials and arbitrations on behalf of his clients in employment law disputes, including wage and hour matters.  Finally, while employed as a partner at another employment law litigation firm from January 2009 until June 2015, Mr. Romero was responsible not only for his own case load of employment law litigation matters, but also for supervising and revising and approving the work of four associates who each had their own case load of employment law litigation matters, including wage and hour matters.  Mr. Romero is also an active member of the National Employment Lawyers Association, an entity that focuses on employee rights in the workplace and whose membership consists of lawyers that primarily, or exclusively, represent employees.  Mr. Romero has also been selected as a Super Lawyer in category of "Employment Litigation" for the years 2019, 2020 and 2021.

The undersigned, David D. Barnhorn, Esq., graduated *cum laude* from Hofstra University Maurice A. Deane School of Law in 2012.  I was admitted to practice in New Jersey and the United States District Court for the District of New Jersey in November 2012, in New York State in 2013, and the United States District Courts for the Eastern and Southern Districts of New York in 2014.  I have been employed as a senior associate for this Firm since April 2018.  Prior to joining this firm, I worked as an associate at two prominent employment law litigation firms from November 2012 until April 2018.  Throughout my legal career, beginning in November 2012 through the present, I have focused my practice almost entirely on employment law litigation, where a majority of my cases have been comprised of individual, collective action and class action wage and hour lawsuits in New York and New Jersey state and federal courts.  Additionally, the undersigned has been appointed as Class Counsel in multiple class action cases.  Throughout my time as an associate, I have been responsible for actively handling cases in pre-litigation stages, arbitration, administrative agencies and in litigation in state and federal courts from their inception through trial and resolution.  Moreover, during my career, I have conducted numerous trials and arbitrations on behalf of my clients in employment law disputes, including wage and hour matters. Finally, I have been selected as a Rising Star by Super Lawyers as an "Employment & Labor Attorney" for the years 2016, 2017, 2018, 2019, 2020 and 2021 and by Best Lawyers: Ones to Watch for the year 2020.

      Here, if Plaintiff's counsel were seeking fees pursuant to the lodestar, Plaintiff would seek hourly rates of $400.00 per hour for Peter A. Romero, Esq., $300.00 per hour for the undersigned, David D. Barnhorn, Esq., and $100.00 per hour for the firm's paralegal, Angelica Villalba.  "A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" Spain v. Kinder Stuff 2010 LLC, 2015 WL 5772190, at *8 (E.D.N.Y. Sept. 29, 2015) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008)).  "The reasonable hourly rates should be based on rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Id. (quoting Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotation marks omitted)).  Here, based on the customary rates charged in this district and the experience of the attorneys responsible for this matter, hourly rates of $400.00 per hour for Mr. Romero, $300.00 per hour for the undersigned, and $100.00 per hour for the firm's paralegal, Ms. Villalba, are reasonable. HRB Prof'l Res. LLC v. Bello, No. 17-CV-7443 (KMK), 2018 WL 4629124, at *8 (S.D.N.Y. Sept. 27, 2018) (collecting cases) (awarding a partner a rate of $440.00 per hour and citing approvingly of cases awarding partners and experienced litigators rates of $400.00 to $600.00 per hour and associates rates of $300.00 per hour); Pineda v. Frisolino, Inc., 2018 WL 3628898, at *2 (S.D.N.Y. July 30, 2018) (approving rates for partner and senior associate at $400.00 per hour and other associates at $300.00 per hour in FLSA and NYLL litigation); Sara Designs, Inc. v. A Classic Time Watch Co. Inc., 2018 WL 2976009, at *4 (S.D.N.Y. June 13, 2018) (approving rate of $450.00 per hour for partner, $325 for senior associate, and $275 per hour for junior associate); Payne v. Kirkland, 2017 WL 5952707, at *3-4 (S.D.N.Y. Nov. 30, 2017) (noting partners in small firms have been awarded rates of $550 to $650 per hour, and awarding partner with 13 years of specialized experience in civil rights cases a rate at $475.00 per hour); Polit v. Glob. Foods Int'l Corp., 2017 WL 1373907, at *8 (S.D.N.Y. Apr. 13, 2017) (awarding $300.00 to associate with four years of experience who acted as lead counsel in FLSA case); Torres v. Gristede's Operating Corp., 2012 WL 3878144, at *3 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 F. Appx. 1 (2d Cir. 2013) (citing Clover v. Shiva Realty of Mulberry, Inc., 2011 WL 1832581, at *1 (S.D.N.Y. May 13, 2011)) (noting, ten years ago, in FLSA and NYLL matter that "[c]onsistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time."); Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 2010 WL 4159391, at *8 (S.D.N.Y. Sept. 30, 2010) (citing LV v. New York City Dept. of Educ., 700 F. Supp. 2d 510, 518-525 (S.D.N.Y 2010)) (noting in FLSA and NYLL matter that "[t]he rates sought by plaintiffs' counsel ($400 for partners, $350 for litigation counsel, $300 for associates with three to seven years of experience, and $200 for associates with one to two years of experience) are consistent with (or lower than) the rates used in other cases involving attorney fee awards..."); Saunders v. City of New York, 2009 WL 4729948, at *8 (S.D.N.Y. Dec. 9, 2009) (approving rate, twelve years ago, of $425.00 per hour for partner, $300 for senior associate, and $250 per hour for junior associate with approximately four years of experience in FLSA matters); New York Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc., 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (approving rate of $425.00 per hour for partners and $300.00 per hour for associates in ERISA matter); New York City Dist. Council of Carpenters Pension Fund v. Quantum Const., 2008 WL 5159777, at *13 (S.D.N.Y. Dec. 9, 2008) (approving rate of $425.00 per hour for partners and $300.00 per hour for associates in ERISA matter); see

also Baizan Guerrero v. 79th St. Gourmet & Deli Inc., 2019 WL 4889591, at *12 (E.D.N.Y. Sept. 10, 2019), report and recommendation adopted, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019) (awarding hourly rate for paralegal at $100.00 in FLSA action); Quito v. El Pedragal Rest., Corp., 2017 WL 2303979, at *2 (E.D.N.Y. May 26, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Lopez v. PMMT Inc., 2016 WL 7633264, at *16 (E.D.N.Y. Aug. 25, 2016), report and recommendation adopted, 2017 WL 27943 (E.D.N.Y. Jan. 3, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Gesauldi v. Dan Yant Inc., 6 F. Supp. 3d 264, 274 (E.D.N.Y. 2014) (collecting cases) (awarding hourly rate for paralegal at $100.00 and noting "[v]arious courts in this district have approved this rate for paralegal services."); Apolinar v. Glob. Deli & Grorcery, Inc., 2013 WL 5408122, at *16 (E.D.N.Y. Sept. 25, 2013) (awarding hourly rate for paralegal at $100.00 in FLSA action).

  Here, Plaintiff's counsel investigated the Plaintiff's claims, conducted a detailed inquiry regarding Plaintiff's job duties, hours worked and compensation received, and Defendant's compensation policies, engaged in relevant discovery, created an assessment of Plaintiff's damages, attended multiple mediation sessions, and subsequently negotiated the parties' formal settlement agreement. Due to the contingent nature of the case, Plaintiff's counsel undertook these efforts with no ultimate guarantee of compensation and facing substantial risk given the high percentage of businesses in the restaurant industry that suffered significant economic downturns during the pandemic, making such lawsuits and the ability to collect a judgment inherently risky. Plaintiff's counsel was zealous in the pursuit of Plaintiff's litigation objectives and secured a favorable result on the Plaintiff's behalf. The settlement will be made available to the Plaintiff without the uncertainty and delay of trial.

  As a result, the Firm expended a total of 39.7 billable hours on this matter, as evidenced by counsel's contemporaneous billing records, which are annexed hereto as Exhibit B. Thus, Plaintiff's attorneys' fees in this matter, when calculated pursuant to the lodestar, amount to $10,870. Here, the attorneys' fees sought – $8,130.40 – amount to less than this firm's fees calculated pursuant to the lodestar method.

  Lastly, Plaintiff's counsel seeks reimbursement for $605.80 in advanced litigation costs, representing $400.00 for the filing fee for the complaint and $205.80 for service of process for the summons and complaint.[2]

  Accordingly, Plaintiff's counsels' requests for attorneys' fees in the amount of $8,130.40 and expenses in the amount of $605.80 should be approved as reasonable.

  In light of the foregoing, the parties respectfully request that the Court approve the parties' settlement and dismiss this matter with prejudice, while maintaining jurisdiction to enforce the terms of the settlement.

---

[2] A copy of the applicable invoices for service of process are attached as Exhibit C.

825 Veterans Hwy, Hauppauge, New York 11788 • (631) 257-5588 • overtimelawny.com

We thank the Court for its consideration of these requests.

Respectfully submitted,

_____
DAVID D. BARNHORN, ESQ.

C: All Counsel of Record *via* ECF